# United States Court of Federal Claims
No. 18-557 C
Filed: August 9, 2018
Reissued: September 6, 2018[1]

|  |  |
|---|---|
| DYNCORP INTERNATIONAL LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant | ) |
| and | ) |
| JPATS LOGISTICS SERVICES, | ) |
| Defendant-Intervenor. | ) |

*David M. Nadler*, Blank Rome LLP, Washington, DC, for plaintiff.

*Eric J. Singley*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

*J. Alex Ward*, Morrison & Foerster, LLP, Washington, DC, for defendant-intervenor.

**OPINION AND ORDER**

*SMITH*, **Senior Judge**

      This post-award bid protest comes before the Court on the parties' Cross-Motions for Judgment on the Administrative Record. Plaintiff, DynCorp International, LLC ("DynCorp"), filed its Complaint on April 17, 2018, objecting to the United States Air Force's ("Air Force" or "Agency") award of the $2.2 billion Solicitation No. FA8617-18-R-6213 ("Solicitation" or "RFP") for the Contractor Operated and Maintained Base Supply ("COMBS") III contract to defendant-intervenor, JPATS Logistics Services, LLC ("JLS"). Administrative Record (hereinafter "AR") at 1. Plaintiff seeks an order (1) awarding equitable relief in the form of an injunction against the COMBS III award to JL, and (2) requiring the Air Force to award the

---

[1] An unredacted version of this opinion was issued under seal on August 9, 2018. The parties were given an opportunity to propose redactions, and those redactions are reflected herein.

COMBS III contract to plaintiff, or, in the alternative, obligating the Agency to re-evaluate the offers and make a new source selection decision. Complaint (hereinafter "Compl.") at 1-2. For the following reasons, plaintiff's Motion for Judgment on the Administrative Record is denied, and defendant and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record are granted.

### I.     Background

On December 9, 2016, the Air Force issued the Solicitation for the COMBS III procurement, a follow-on to the COMBS II contract and its successor, the COMBS Bridge contract. AR 1. Plaintiff is the incumbent for both the COMBS II and the COMBS Bridge contracts. AR 8866. Plaintiff notes that, as a successor contract, the COMBS III contract is substantially similar to the COMBS II and COMBS Bridge contracts. Compl. at 5. The Solicitation calls for an award of a single Indefinite Delivery/Indefinite Quantity hybrid contract with both Firm Fixed Price and Cost Reimbursable No Fee Contract Line Items. AR at 2450.

The Solicitation provided that the award would be made according to a best-value trade-off analysis, and that determination would be based on an assessment of the following three factors: (1) Technical Acceptability, (2) Past Performance, and (3) Price. AR 2491. The Agency also declared that a best-value trade-off between past performance and price would be made among proposals determined to be technically acceptable, and past performance would be significantly more important than price. AR 2491. The Solicitation stated that the Air Force would assign offerors a past performance rating of "Substantial Confidence, Satisfactory Confidence, Limited Confidence, or No Confidence" based on factors of Relevancy and Quality. AR 2495. The Agency also determined whether each offeror was responsible, pursuant to Federal Acquisition Regulation ("FAR") 9.104-1(a). AR 5740, 5759, 5787, 5805. The Agency published its responsibility determinations in the Defense Contracting Management Agency's ("DCMA") Pre-Award Survey ("Survey") for each offeror. AR 5739-5740, 5759, 5786-5787, 5804-5805.

On December 21, 2017, DynCorp received notice that its offer was unsuccessful, and that the Air Force had awarded the COMBS III contract to JLS. AR 8622. On January 2, 2018, DynCorp filed a protest with the Government Accountability Office ("GAO"). AR 8866. On April 12, 2018, the GAO denied DynCorp's protest. AR 17933. On April 17, 2018, DynCorp filed its Complaint. *See generally* Compl. In its Complaint, plaintiff alleges the following: (1) the Air Force improperly awarded the follow-on the COMBS III contract to JLS; (2) JLS's bid price was so low that it could not have included the basic inventory levels required for successful performance, and the Air Force ignored serious indicators that JLS lacked the financial resources to complete the contract; and (3) JLS' proposal was technically deficient under the terms of the Solicitation. *Id.* at 2-4.

On May 25, 2018, DynCorp filed its Motion for Judgement on the Administrative Record. *See generally* Plaintiff DynCorp International LLC's Motion for Judgment on the Administrative Record (hereinafter "P's MJAR"). On June 15, 2018, the government filed its Cross-Motion for Judgment on the Administrative Record, and Response to Plaintiff's Motion for Judgment on the Administrative Record. *See generally* Defendant's Cross-Motion for

Judgment on the Administrative Record, and Response to Plaintiff's Motion for Judgment on the Administrative Record (hereinafter "D's CMJAR"). On June 15, 2018, defendant-intervenor, JLS, filed its Response and Cross-Motion for Judgment on the Administrative Record. *See generally* Defendant-Intervenor JPATS Logistics Services, LLC's Response and Cross-Motion for Judgment on the Administrative Record (hereinafter "DI's CMJAR").

On June 26, 2018, DynCorp filed its Response to Defendant and Defendant-Intervenor's Cross-Motions for Judgment on the Administrative Record and Reply in Support of its Motion for Judgment on the Administrative Record. *See generally* Plaintiff DynCorp International LLC's Response to Defendant and Defendant-Intervenor's Cross-Motions for Judgment on the Administrative Record and Reply in Support of its Motion for Judgment on the Administrative Record (hereinafter "P's Reply"). On July 9, 2018 the government filed its Reply to Plaintiff's Response to Defendant's Cross-Motion for Judgment on the Administrative Record. *See generally* Defendant's Reply to Plaintiff's Response to Defendant's Cross-Motion for Judgment on the Administrative (hereinafter "D's Reply"). On July 9, 2018, JLS filed its Reply in Support of Its Cross-Motion for Judgement on the Administrative Record. *See generally* Defendant-Intervenor JPATS Logistics Service, LLC's Reply in Support of Its Cross-Motion for Judgement on the Administrative Record (hereinafter "DI's Reply"). The Court held oral argument on this matter on July 17, 2018. The parties' motions are fully briefed and ripe for review.

## II.   Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). Although the Tucker Act expressly waives the sovereign immunity of the United States against such claims, the act "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part).

This Court has jurisdiction over bid protest actions pursuant to 28 U.S.C. § 1491(b). The Court evaluates bid protests under the standard of review for an agency action set forth in the Administrative Procedure Act ("APA"). *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). An agency procurement action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A) (2012). "The arbitrary and capricious standard applicable [in bid protests] is highly deferential." *Advanced Data Concepts v. United States,* 216 F.3d 1054, 1058 (Fed. Cir. 2000). Agencies, and contracting officers in particular, are "'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." *Savantage Fin. Servs v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010) (quoting *Impresa*, 238 F.3d at 1332).

When reviewing a motion for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), the Court assesses whether the administrative body, given all the disputed and undisputed facts in the record, acted in a manner that complied with the legal standards governing the decision under review. *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013) (citing *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 571, 585 (2006); *Greene v. United States*, 65 Fed. Cl. 375, 382 (2005); *Arch Chems., Inc. v. United States*, 64 Fed. Cl. 380, 388 (2005)). Under RCFC 52.1, the parties are limited to the Administrative Record, and the Court makes findings of fact as if it were conducting a trial on a paper record. *See Bannum*, 404 F.3d at 1354. Looking to the Administrative Record, the Court must determine whether a party has met its burden of proof based on the evidence in the record. *Id*. at 1355.

When a protestor claims that the agency's decision violates a statute, regulation, or procedure, the protestor must show that the violation was "clear and prejudicial." *Impresa*, 238 F.3d at 1333. The Court will "interfere with the government procurement process only in extremely limited circumstances." *EP Prods., Inc. v. United States,* 63 Fed. Cl. 220, 223 (2005) (quoting *CACI, Inc.-Fed. v. United States,* 719 F.2d 1567, 1581 (Fed. Cir. 1983)). "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). The Court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974).

Standing in bid protests is framed by 28 U.S.C. § 1491(b)(1), which requires the bid protest to be brought by an "interested party." A protestor is an "interested party" if it is "(1) [an] actual or prospective bidder and (2) possess[es] the requisite direct economic interest." *Weeks Marine, Inc., v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)). In a post-award protest, a bidder has a direct economic interest in a procurement if it can show that "there was a substantial chance it would have received the contract award but for the alleged error in the procurement process." *Linc Gov't Servs., LLC. v. United States*, 96 Fed. Cl. 672, 694. (2010) (quoting *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312 (Fed. Cir. 2003)). The nature of the protest will dictate the necessary factors for a "direct economic interest." *Sys. Appl. & Techs. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012).

### III.   Discussion

#### A.   Standing

As previously noted, to have standing in a bid protest, a protester must establish that it "(1) is an actual or prospective bidder and (2) possesses the requisite direct economic interest." *Weeks Marine, Inc.*, 575 F.3d at 1359. While no party questions whether plaintiff was a bidder, defendant argues that plaintiff lacks the direct economic interest required to establish standing.

D's CMJAR at 10.  Specifically, defendant contends that plaintiff, as the fourth ranked offeror, lacked any substantial chance of winning the COMBS III contract, so it fails to qualify as an interested party under 28 U.S.C. § 1491(b)(1).  *Id.* at 10-11.

      The Court disagrees.  The "allegational prejudice" plaintiff must demonstrate to satisfy standing centers on the "impact that the alleged procurement errors had on a plaintiff's prospect for award, taking the allegations as true."  *Linc Gov't Servs.,* 96 Fed. Cl. at 695.  DynCorp alleges that, absent the agency's evaluation errors, the company would have "received the highest past performance rating," and that DynCorp would be in direct contention for the COMBS III contract.  P's Reply at 5.  That allegation satisfies the substantial chance doctrine. *See Linc Gov't Servs.,* 96 Fed. Cl. at 694.  Thus, this Court holds that plaintiff has the requisite standing to proceed to a decision on the merits.

### B. Responsibility Determination

      This Court will defer to an agency's expertise in making procurement decisions, unless the agency has "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [issued a decision that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  In its Motion, plaintiff argues that the Agency unreasonably determined that JLS was a responsible offeror when the Contracting Officer ("CO") "reflexively accepted" JLS's Survey "without meaningful review."  P's MJAR at 12, 14.  As plaintiff highlights, defendant-intervenor's initial offer described JLS as a "[joint venture] formed between" IAP Worldwide Services ("IAP") and Kellstrom Defense Aerospace ("KDA"), with IAP serving "as the managing partner."  P's MJAR at 12; AR 5000.  JLS's Survey, meanwhile, described defendant-intervenor as a "majority-owned subsidiary" of IAP.  AR 5786.

      Plaintiff avers that this discrepancy in the description of the corporate relationship between JLS and IAP Worldwide Services ("IAP") constituted a "fundamental error" in the DCMA's analysis, and that the CO's failure to "identify this obvious flaw" was unreasonable. P's MJAR at 12.  DynCorp further contends that this semantical difference prevented both the DCMA and the CO from "properly consider[ing] the risk" that JLS might lack the "financial resources to perform the contract, or the ability to obtain them."  P's MJAR at 13-14; *see also* FAR 9.104-1(a).  Plaintiff offers <u>DCMA's Postaward Financial Surveillance on IAP Worldwide Services, Inc.</u> ("Post Award Report") as evidence of JLS's "dire financial condition," citing IAP's "2014 restructuring [and] ███████████████████."  P's MJAR at 14; *see also* AR 8421 (referencing IAP's "debt restructuring" stemming from "financial difficulties").  Plaintiff concludes that the Agency's failure to heed these financial red flags created a "fundamental flaw in [JLS's] financial responsibility evaluation."  P's MJAR at 17.

      Rather than demonstrating prejudicial error, plaintiff's efforts serve to highlight the reasonableness of the Agency's actions, particularly given the deference the Court owes to agency responsibility determinations.  *See Impresa*, 238 F.3d at 1334-35; *John C. Grimberg Co., Inc. v. United States*, 185 F.3d 1297, 1303 (Fed. Cir. 1999); *Bowman Transp., Inc.,* 419 U.S. 281 at 285-86.  Plaintiff attempts to fault the CO for "reflexively accept[ing]" JLS's Survey results.

P's MJAR at 12. However, the courts have long held that a contracting officer determines "what, and how much, information" he or she requires to make the responsibility determination. *John C. Grimberg*, 185 F.3d at 1303. Here, the CO took appropriate steps to determine JLS's responsibility, including its financial health, based on the Source Selection Authority's "extensiv[e]" review of "all available documents pertaining to the acquisition," including IAP's status as JLS's guarantor and IAP's "financial capacity to support" JLS. *E.g.* AR 5784, 8419-20, 8618.

DynCorp further argues that the Agency unreasonably ignored JLS's financial instability, which stemmed from IAP's debt restructuring. P's MJAR at 14; *see also* AR 8421 (referencing IAP's "debt restructuring" and "financial difficulties"). However, the record demonstrates that the CO did not ignore JLS's financial instability, but rather reasonably relied on the relevant Survey's conclusion that JLS and IAP were not financially unstable. AR 5786, 8420. Indeed, the DCMA stated in JLS's Survey that intervenor had or could "obtain adequate financial resources . . . necessary for the successful completion" of the COMBS III contract, based in part on IAP's role as a "corporate [g]uarantor." AR 5783-84, 8420. In its Post Award Report, the DCMA took additional steps to review JLS's ability to execute the COMBS III contract, finding that JLS's financial condition was "satisfactory to support its financial obligations." AR 8426.

In evaluating IAP's potential instability, refinancing does not necessarily impair a company's financial position, but rather, it can improve it. AR 8423. Indeed, the DCMA noted an "upward trend in sales, net worth, and cash flow" for IAP after the company's restructuring. *Id.* Given the steps that the Agency took to reasonably determine JLS's responsibility, plaintiff fails to demonstrate a "clear and prejudicial error" that would warrant ignoring well-established principles of judicial deference. *Bowman Transp., Inc.,* 419 U.S. 281 at 285-86; *Impresa,* 238 F.3d at 1333.

### C. Past Performance

As previously iterated, this Court will defer to an agency's expertise in making procurement decisions unless the agency has "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [issued a decision that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc.*, 586 F.3d 1372 at 1375. The Solicitation required the Agency to assign an adjectival rating to each offeror based on the "result of the Quality and Relevancy Assessments of the recent contracts evaluated." AR 2498. Here, plaintiff argues that the Agency unreasonably evaluated Past Performance Quality and Relevancy subfactors, and that plaintiff was prejudiced by that unfair treatment. P's MJAR at 22, 28, 29, 35.

DynCorp avers that JLS's past performance was not relevant because the size, complexity, and nature of JLS's assessed contracts were small, simple, and dissimilar to the COMBS III contract. P's MJAR at 22. In light of these alleged deficiencies, DynCorp contends that the Air Force "arbitrarily inflated JLS's Past Performance" rating by assessing JLS's prior experience as "Relevant." *Id.* Plaintiff further argues that the Air Force acted irrationally in assigning L-3 Communications Vertex Aerospace ("L3V") the highest overall past performance

rating, despite the DCMA assigning L3V a "Marginal" rating for its Army C-12 contract. *Id.* at 29. DynCorp also challenges its own Past Performance rating, arguing that the Agency undervalued plaintiff's "exceptional performance on the COMBS II contract" and "unreasonably assessed" plaintiff's performance on the C-21 contract. *Id.* at 35, 37. While acknowledging that a subcontractor used an "unauthorized paint stripper" for plane maintenance on the C-21 contract, plaintiff emphasizes that this "isolated issue" did not warrant the comparatively lower Past Performance rating. P's MJAR at 37-38.

DynCorp also contends that the Air Force, in other ways, unfairly evaluated offeror past performance, thereby prejudicing plaintiff by arbitrarily reducing its rank relative to other offerors. *See* P's MJAR at 24-29. Plaintiff highlights the disparity between the small numbers of aircraft JLS serviced in its evaluated contracts compared to plaintiff's own highly relevant experience maintaining more numerous aircraft as the COMBS II incumbent. *Id.* at 22-23. Given this numerical difference, plaintiff concludes that the Air Force unreasonably "inflated JLS's Past Performance" while underrating plaintiff. *Id.* DynCorp also contrasts its paint thinner problems with the "serious Information Technology" issue on JLS's E-6B CLS contract, arguing that the Air Force irrationally penalized plaintiff more than JLS. P's MJAR at 38; AR 13245. Finally, plaintiff claims that the Air Force unreasonably rated DynCorp lower than L3V for the Supply Chain Management subfactor, despite both offerors receiving a mix of ratings throughout their evaluated contracts. P's MJAR at 31.

Plaintiff's past performance arguments are unpersuasive. The Court is mindful that, given the subjective nature of past performance evaluations, deference is owed to the Agency. *Vanguard Recovery Assistance v. United States*, 101 Fed. Cl. 765, 785 (2011); *see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 909 (Fed. Cir. 2013). But even if the Court did not defer to the Agency, DynCorp still does not prevail. First, despite plaintiff's arguments to the contrary, the record shows that the Agency took appropriate steps in assessing offeror past performance, including the Quality subfactor. *See e.g*. AR 6137-6140, 6141-6142, 6143-6144, 6145-6146, 6147-6150, 6151-6154, 6155-6158, 6159-6161, 12283-12286, 13338-13341, 13342-13345, 13346-13347, 13348-13351, 13392-13397.

In particular, DynCorp focuses on the Air Force's evaluation of L3V's C-12 contracts, stating that transition and "maintenance procedur[e]" problems did not justify L3V's rating of "Substantial Confidence." P's MJAR at 29, 31. It is true that the Agency assigned a Marginal rating for one of L3V's quality subfactors in its Army C-12 contract. AR 18305. However, out of 15 non-redacted, ranked subfactors, L3V received three "Exceptional" ratings (the highest), seven "Very Good" ratings, four "Satisfactory" ratings, and only one "Marginal" rating (the lowest). *Id.* It seems reasonable that the Agency could assign an overall rating of "Substantial Confidence," particularly given that the lowest ratings occurred in the Transition period, which only accounts for a small percentage of the overall life of the contract. *Id.*

Plaintiff also questions its own Quality subfactor ranking, arguing that its record on the COMBS II contract "warrants a Substantial Confidence rating," rather than the "Satisfactory Confidence" rating the Agency assigned. P's MJAR at 35; AR 12367. Looking to the totality of the 10 non-redacted, ranked subfactors, the Agency assigned three "Very Good" ratings and seven "Satisfactory" ratings. AR 12367. Similar to the Agency's evaluation of L3V, it seems

reasonable that the Agency could have assigned the rating that it did, since two-thirds of the subfactor ratings mirrored the overall rating. Plaintiff therefore fails to raise valid concerns regarding the reasonableness or fairness of the Agency's Past Performance evaluation process.

Instead, DynCorp seeks to have the Air Force penalize JLS and L3V for their prior problems, while overlooking plaintiff's own past challenges. P's MJAR at 27, 37-38. While plaintiff may disagree with the Agency's assessments, its objections to the Air Force's Quality subfactor determinations are merely a disagreement with the Agency's evaluations. AR 17943. The GAO concluded that the Agency reasonably assessed the quality of offeror past performance in accordance with the terms of the Solicitation, and the Court concurs. *See* AR 17937.

Similarly, the Agency acted within its reasonable discretion to define "relevancy" when analyzing offeror past performance. AR 17942. As the GAO noted, JLS's numerically smaller contracts were relevant because the planes serviced were "significantly more complex" than those in the COMBS III contract. AR 17942. The GAO emphasized that the Solicitation "did not expressly define" relevancy, "thereby affording the Air Force even greater discretion to determine the relevance of offeror's past performance." *Id.*

Finally, Plaintiff alleges agency unfairness but confuses differing assessments with unfair treatment. The record shows that the plaintiff's substandard quality on the C-21 contract resulted in its lower, "Satisfactory" rating for Past Performance. AR 12278-12279. Based on the record, it seems to this Court that the Agency did not engage in unfair or unequal treatment. AR 12279, 17947. Instead, the Agency reasonably weighed Relevance against Quality in assigning its ratings.

As the GAO report concluded, these types of qualitative assessments lie at the heart of the Agency's prerogative, "since it is the agency that must bear the burden of any difficulties resulting from a defective evaluation, and we will not substitute our judgment for a reasonably based past performance rating. *Id.* (citing *PEMCO World Air Servs.*, B-284240.3 et al., Mar. 27, 2000, 2000 CPD ¶ 71 at 7). Given the deference courts generally afford to agencies, the reasonableness of the CO's actions, and the prerogative of the Agency, this Court can only determine that plaintiff has failed to show "clear and prejudicial error" in the Air Force's Past Performance evaluation. *See e.g. Bowman Transp., Inc.,* 419 U.S. 281 at 285-86; *Impresa,* 238 F.3d at 1333.

### D. Pricing Proposal and Best-Value Determination

In addition to plaintiff's previously-discussed, more substantive arguments, DynCorp made two additional assertions. P's MJAR at 17, 40. First, plaintiff alleges that the Agency unreasonably evaluated offeror pricing proposals. P's MJAR at 17. Plaintiff contends that JLS and AAR Corp. "improperly shifted the cost" of Contractor Furnished Property ("CFP") to the Agency. *Id.* Plaintiff argues that the Solicitation requires that materials, including CFP, will be "provided by the Contractor," but plaintiff does not successfully demonstrate that the Solicitation barred offerors from including the cost of the CFP in their pricing proposals. *Id.* at 17 (citing AR 252). Moreover, as JLS notes, the relevant statute "expressly allowed" offerors to include the

cost of materials, such as CFP, in their pricing proposals. DI's CMJAR at 12 (citing 48 C.F.R. § 31.205-26).

Plaintiff also alleges that defendant-intervenor's pricing proposal "cannot support its CFP purchase," which would "intensify" JLS's alleged "financial difficulties." P's MJAR at 20. Plaintiff further contends that JLS's "dramatically low" price "demonstrate[d] a lack of understanding" of the Solicitation requirements. *Id.* at 20-21. This sufficiency argument appears to be grounded in plaintiff's disagreement with the way in which the Agency evaluated price. *See* AR 3371, 3408.

The Solicitation required the Agency to evaluate price proposals for completeness, and plaintiff fails to demonstrate why JLS's price was incomplete. *Id.* DynCorp believes defendant-intervenor could not perform the COMBS III contract at a price lower than plaintiff's proposed price. P's MJAR at 20-21. However, the Agency determined that JLS's price was not unreasonably low and accepted it. AR 3371, 3408, 4735-4740, 7637-7642, 5795, 8419. Without any hard evidence to the contrary, this decision is well within the Agency's discretion. As such, plaintiff has not shown to the Court that the Agency acted unreasonably.

Second, plaintiff argues that the Agency's best-value determination was unreasonable. P's MJAR at 40. Plaintiff alleges that "had the Air Force conducted a proper proposal evaluation, it would have determined that [plaintiff] offered the best value." *Id.* In keeping with the previously stated analysis, the Court disagrees. The Court finds the best-value determination reasonable, as it was based on real evidence and the Agency's assessment of JLS's ability to perform, both of which the Court discussed in detail above.

A best-value determination is in part subjective. As such, it was well within the Agency's discretion to determine that JLS's offer presented the best value, based upon the Agency's procedures and the factual record. *Tech Sys., Inc. v. United States*, 98 Fed. Cl. 228, 262 (2011) (affirming an agency's discretion in determining best value). Plaintiff posits that best-value determinations based on "defective" evaluations should be overturned. P's MJAR at 40 (citing *Femme Comp Inc. v. United States*, 83 Fed. Cl. 704, 757-70 (2008)). Objective parameters may indeed constrain agency decisions, but so long as the Agency's determination comports with the parameters of the Solicitation, as it did here, the Court will uphold that decision. The Agency's evaluations were not defective, and, thus, plaintiff's best-value determination argument is unpersuasive.

Even if this Court disagreed with the Agency's decision to award the COMBS III contract to JLS, there is still a rational basis for the Air Force's award. It appears to the Court that the Air Force's choice of JLS was reasonable, based upon a record of proper evidentiary evaluations. This is not a case in which the Agency "failed to consider an important aspect of the problem" or "issued a decision that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus.*, 586 F.3d 1372 at 1375. The Administrative Record supports the Air Force's decision to award the COMBS III contract to JLS. As such, plaintiff has failed to demonstrate that the Agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

**IV.     Conclusion**

For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record is **DENIED**.  Defendant's CROSS-MOTION for Judgment on the Administrative Record is **GRANTED**.  Defendant-Intervenor's CROSS-MOTION for Judgment on the Administrative Record is **GRANTED**.  The Clerk is directed to enter judgment in favor of defendant and defendant-intervenor, consistent with this opinion.[2]

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

---

[2] This opinion shall be unsealed, as issued, after August 23, 2018, unless the parties identify protected and/or privileged materials subject to redaction prior to that date.  Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons therefor.